---

## Case No. 1,179.

BEAR v. LUSE.

[6 Sawy. 148; 12 Chi. Leg. News, 130.][1]

Circuit Court, D. Oregon. Dec. 10, 1879.

PUBLIC LANDS — TOWN SITE — SUIT TO AFFECT A PATENT—QUESTIONS OF FACT—DECISIONS OF THE LAND DEPARTMENT—QUESTIONS OF LAW.

1. The occupation of a tract of land as a town site for the purposes of business or trade, which is afterwards abandoned, does not impress upon the locality the character or quality of a town site, so that the same can not be taken up and held under the donation act as unoccupied public land.

2. Equity does not have jurisdiction to affect a patent except upon the ground of an antecedent equity in the plaintiff which was disregarded in the issuing thereof, and therefore a party who claims to have settled upon a tract of public land subsequent to the settlement and entry thereof by another who has received the patent for the same, upon the ground that the settlement and entry of the patentee were illegal and void, can not maintain a suit to set aside such patent or charge the patentee as his trustee of the premises.

3. Questions of fact decided in the land department are not subject to review by the courts, except for fraud or mistake other than an error of judgment; and where there is a contest in such department between one who claims to be a settler upon a portion of the public land, to cancel the entry of a prior settler upon the same land, the decision therein precludes further inquiry by the parties into any question of fact which might properly have been made in such contest, the same as if it had been actually so made and considered.

4. Whether a settler under the donation act upon unsurveyed lands could commute his residence thereon, under section 1 of the acts of February 14, 1853, and July 17, 1854, by the payment of one dollar and twenty-five cents an acre therefor, is a question of law, and therefore the decision of the land department thereon may be reviewed by this court upon the suit of a party having an equity in the premises prior to such entry, but not otherwise, except in a suit by the United States to cancel the patent issued upon such entry.

[In equity. Bill by John Bear against H. H. Luse to enjoin certain proceedings at law on the part of Luse to recover possession of certain lots in Marshfield. Bill dismissed.

[Bills were also filed against the same defendant, for the same purpose, by W. F. Deubmer, George Wolf, Frederick Timmerman, William G. Webster, A. Lobree, C. B. Golden, and William Temple. By stipulation the case of Bear against Luse was argued and submitted upon the understanding that the final determination therein should be followed in the other cases. These bills were also dismissed.]

Walter W. Thayer and William G. Webster, for plaintiff.

John Burnett and R. R. Strahan, for defendant.

Before FIELD, Circuit Justice, and DEADY, District Judge.

DEADY, District Judge. In the spring of 1877, H. H. Luse commenced actions at law in the circuit court for the county of Coos against a number of persons to recover the possession of certain lots in the town of Marshfield, in said county, the same being parts of lots 3 and 4 of section 26, in township 25 south, of range 13 west of the Wallamet meridian. Each of the defendants in these actions filed a complaint in equity in the nature of a cross bill, under section 377 of the Oregon Civil Code, against Luse, to stay the proceedings therein, and praying

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 12 Chi. Leg. News, 130, contains only a partial report.]

that he be enjoined from "asserting any right or title to the premises" or "interfering with the plaintiffs in occupying and holding" the same. Under said section 377, the effect of this was to stay the proceedings in the actions at law until the final disposition of the suit in equity. On account of the disability of the judge, the cases were removed by stipulation to the circuit court for the county of Marion. In November, 1878, they were removed by Luse to this court, upon the grounds that he was a citizen of California, and that the controversy therein arises under the donation and town-site acts of the United States, and were entered here on January 6, 1879. By stipulation, the evidence taken in this case was to be considered as taken in the others; and on August 21 it was argued and submitted, upon the understanding that the final determination therein should be followed in the other cases.

The material facts in the case are as follows: On March 24, 1877, the land office at Roseburg issued a patent certificate, No. 1,961, in favor of Wilkins Warwick, for a donation of one hundred and sixty acres, under the donation act of September 27, 1850, (9 Stat. 497,) upon a residence thereon from August 4, 1854, to March 10, 1856, and the payment on September 16, 1856, of one dollar and twenty-five cents per acre, under the acts of February 14, 1853, (10 Stat. 158,) and of July 17, 1854, (10 Stat. 306,) amendatory of said donation act, in lieu of the remainder of the four years' residence thereby required, the same being lots 3 and 4 of section 26, the north one-half of the south-east one-quarter of section 27, all in township 25 south, of range 13 west of the Wallamet meridian; upon which certificate a patent for said premises was on May 6, 1876, issued to said Warwick, and the defendant, Luse, on and before the commencement of said actions at law, had, by means of sufficient conveyances, acquired all the interest of said Warwick in the premises. In 1869, proceedings were instituted in the local land office in the interest of the inhabitants of Marshfield, and with a view of entering the same for their benefit as a town site, to cancel and set aside Warwick's notification and entry upon the charge of "abandonment." The ground of this charge was, that the commutation entry of September 16, 1856, was void, the land being then unsurveyed, and therefore the failure to reside thereon, thenceforth, amounted to an abandonment. That office and the commissioner of the general land office decided the question against Warwick, holding that section 1 of the acts of February 14, 1853, and of July 17, 1854, providing for the payment of one dollar and twenty-five cents per acre in lieu of the last three years' residence upon the donation required by the act of September 27, 1850, did not apply to unsurveyed lands.

Upon an appeal to the secretary of the interior, that officer on May 29, 1874, reversed such decision, saying: "The language [of said section 1] is somewhat ambiguous, but it is undoubtedly susceptible of a construction to include unsurveyed land, and such a construction seems to be in strict conformity with the spirit of the act and the objects intended to be accomplished by its passage. The construction adopted is extremely technical, and I think contrary to the policy of the act, which was a benevolent statute, and as such had received, in all adjudicated cases arising under it, an exceptionally liberal interpretation. Stark v. Starr, 6 Wall. [73 U. S.] 402; Silver v. Ladd, 7 Wall. [74 U. S.] 219." The secretary also held that the entry of Warwick being, prima facie, regular and valid, the contestants, who had neither alleged nor claimed any prior interest in the land, could not maintain a proceeding to set it aside.

The present suit is sought to be maintained not only upon the ground passed upon in the land department, namely, the abandonment by Warwick of his residence upon the premises before he had complied with the requirements of the law, but also upon the ground that the premises included in the patent to Warwick are a part of the town site of Marshfield, which "was settled upon for the purposes of business and trade, and not agriculture, long prior to the date of the pretended settlement or occupation by Warwick," and that, relying upon this fact, the plaintiff settled upon the lot in controversy, expecting "that title thereto would be duly obtained in accordance" with the laws of the United States.

Briefly, it appears from the evidence that in March, 1854, Mr. J. C. Tolman, now surveyor-general of this state, went upon the ground with his family, and marked out a claim of three hundred and twenty acres, to which he gave the name of Marshfield, and built a double log house thereon, with the intention of acquiring the same as a donation under the act of September 27, 1850, and building a town thereon. About August 1, Tolman removed to Jackson county, where he settled upon three hundred and twenty acres of the public land and acquired the title to the same under the donation act, and never returned to Coos county. When he left he made an arrangement with one A. J. Davis to hold the claim thereafter together, Davis procuring Warwick to hold the north end of the claim for him, and one A. J. Gaskill the south end for Tolman. Just prior to leaving, Tolman gave Captains Crosby and Williams, who were in the bay with a vessel, two lots, on the marsh near the water, on condition that they would build a store and warehouse thereon, and occupy the same as a place of business. During the summer they caused a small frame house to be erected there, but never occupied it or returned to the place. On August 4, 1854, Warwick went into the log house built by Tolman, and resided there for over a year,

claiming to be a settler under the donation act, during which time, on March 10, 1856, he filed a notification under the donation act for one hundred and sixty acres, including such dwelling house, and on September 16, 1856, per said Davis, made proof of such residence and cultivation, and entered the same at one dollar and twenty-five cents per acre, under the donation act and section 1 of the acts of February 14, 1853, and July 17, 1854. In the fall of 1856 Warwick and Davis, left the country, and have not yet returned to it, and at the same time, James T. Jordan, by the permission of Davis, occupied the house built by Crosby and Williams as a store. Davis gave Jordan instructions to look after the claim and pay the taxes on it, which he did for about five years, when Luse assumed an oversight of the place as the agent of Davis and within a year thereafter as the owner of the same. On June 10, 1855, Tolman sold his supposed interest in the Marshfield claim to J. S. Hatch, who soon after took George C. Furber into the speculation as a partner. In the fall of 1856, Socrates Schofield, under the direction of said Hatch, Furber, and Davis, laid off a village upon the claim taken up by Tolman, the smaller portion of which was upon the tract patented to Warwick, and made plats thereof, which was the first attempt to lay off a town upon the premises. The first house built upon the Marshfield claim after the two built in 1854, was built in 1857, and occupied as a dwelling-house by a man named Hamilton. The next house was a saloon, built in 1866, and now occupied by the plaintiff. Soon after this, in 1866–67, a saw-mill was built at Marshfield, and people commenced to occupy the place as a town; and at the commencement of these actions at law there were from fifty to seventy-five houses on the portion included in Warwick's donation. On October 24, 1874, the town of Marshfield was duly incorporated, with the following boundaries: "Commencing at a point on the ship channel of Isthmus slough, ten chains north of the south-east corner of lot 2 in section 26 of township 25 south of range 13 west; thence west to the east line of section 27 of said township; thence north along said line forty chains; thence east to the inside channel of Coos bay; and thence southerly along said channel to the place of beginning." Sess. Laws, 162. These boundaries include the lots involved in this litigation. In November, 1873, and before the incorporation of said town, an application was made by G. Webster, acting on behalf of the inhabitants of the place, to enter land as a town site, including a portion of the Warwick donation. The contest to cancel Warwick's entry being then pending in the land department at Washington, the application and money were merely received by the officers as a deposit to await the result of such contest, and were returned to Webster in the same month. On February 19, 1877, the

trustee of the town of Marshfield applied at the land office to make the same entry, but the application was rejected on the ground that it was not open to entry.

Upon this state of facts this suit can not be maintained. The place called Marshfield was not, as a matter of fact, occupied as a town site, or settled upon for the purpose of business or trade, prior to the survey of the same into lots and blocks in the fall of 1856, and probably not until 1866, and never within the meaning of the town-site act of May 23, 1844, (5 Stat. 657,) and section 1 of the act of July 17, 1854, (10 Stat. 305.) The act of July 17, 1854, supra, first extended the town-site act of May 23, 1844, over Oregon, and they are so far in pari materia, and therefore should be construed as one. Taken together, they provide that thereafter a donation claim shall not be surveyed so as to include lands settled upon and occupied as a town site. But this settlement and occupation must have taken place before the settlement under the donation act, and not been given up or abandoned. If any number of people had settled upon the Marshfield claim in 1854, as a town site, for the purposes of business or trade, and thereafter, and before the entry of the same, had left the place—abandoned it—the land would not thereby have had the character or quality of a town site indelibly impressed upon it, so that it could not afterwards be taken and held under the donation act. On the contrary, so soon as it was not occupied as a town site it was abandoned, and was open to settlement under the donation act as though it had never been occupied for any purpose. Lownsdale v. Portland, [Case No. 8,578.] Mr. Tolman's interest in the land as a town site, or otherwise, ceased with his occupation of it on August 1, 1854, and the next comer took it unaffected by the fact or purpose of such occupation. The agreements by which it was attempted to prolong his interest in the claim after he ceased to occupy it through the occupancy of others were clearly illegal, and could not affect the rights of any one. Donation Act, § 12. When Warwick's settlement commenced upon the Marshfield claim August 4, 1854, it was vacant land. There was no one else living upon or claiming it, and it was clearly open to settlement under the donation act; and, if any number of people settled on it thereafter for the purposes of business or trade, that did not make the place a town site, within the meaning of the statute, but such persons were either trespassers or occupants under the owner, Warwick. A settler under the donation act has the legal estate in his donation from the date of his settlement, and no number of people can deprive him of it by occupying it as a town site or otherwise. Chapman v. School Dist. [Case No. 2,607;] Fields v. Squires, [Id. 4,776;] Mizner v. Vaughn, [Id. 9,678;] Adams v. Burke, [Id. 49.] But it is alleged, and there

is evidence tending to prove the allegation, that Warwick's settlement under the donation act was fraudulent and void because not made for himself, but for Davis or Tolman. But the plaintiff is not in a condition to question the legality of Warwick's settlement and occupation and the patent to him thereon. Equity does not have jurisdiction to affect or set aside a patent, or to hold the patentee as a trustee for another, except upon the ground of an antecedent equity in the plaintiff, which was disregarded or overlooked in the issuing of such patent. Stark v. Starr, 6 Wall. [73 U. S.] 410; Frisbie v. Whitney, 9 Wall. [76 U. S.] 196.

The interest of the plaintiff, if any, is subsequent to the settlement, occupation, proof, and entry of Warwick. Prima facie, the premises had become the property of Warwick before the plaintiff's occupation began. The legality of Warwick's settlement and occupation was then exclusively a question between him and the United States; and, until such entry was canceled by the latter, neither the inhabitants of Marshfield, nor any one for them, was entitled to enter the land as a town site. Rightfully or wrongfully, the land had been granted to another before there were any occupants of lots in Marshfield other than the donee thereof. The plaintiff is, therefore, without any established interest in or right to the premises, and therefore has no standing in a court of equity to question the legality of the patent to Warwick or the sufficiency of the grounds upon which it issued. But a contest was had in the land department between the inhabitants of Marshfield and Warwick upon the question of the validity of this entry, which was decided in favor of the latter. In the contest the only objection made to the donation entry was that, being upon unsurveyed lands, the settler was not entitled to commute the required residence thereon by paying for the land at the end of one year's residence, at the rate of one dollar and twenty-five cents per acre. And that question being one of law merely, depending for its solution upon the proper construction of section 1, of the act of February 14, 1853, which provides that settlers under the donation act, "who have located or may hereafter locate" public land, "of which survey shall have been made or may hereafter be had," shall, after one year's occupation, in lieu of the residence required by that act, be permitted to pay "one dollar and twenty-five cents per acre for the lands so claimed, located, and surveyed as aforesaid," this court might now, if the plaintiff had any interest in or right to the premises, review the action of the land department thereon and annul it, if erroneous. But, as it is, that action can only be reviewed in a suit by the United States to cancel and set aside the patent on the ground that it was illegally issued. But, even if the plaintiff could maintain a suit to affect this patent, yet no mere question of fact decided by the land department in the progress of the matter, or which might have been made therein, can now be reviewed by this court except for fraud or mistake other than an error in judgment in estimating the value or effect of evidence. Johnson v. Towsley, 13 Wall. [80 U. S.] 83; Shepley v. Cowan, 91 U. S. 340; Aiken v. Ferry, [Case No. 112;] Stevens v. Sharp, [Id. 13,410.] Therefore the question whether Warwick's settlement, occupation, and entry were in fact for himself or for Davis or Tolman, or whether the Marshfield claim was occupied as a town site or settled upon for the purposes of business or trade at or prior to Warwick's settlement thereon, can not be inquired of in this suit. For, although these questions were not specifically made in the contest in the land department, they were plainly within the scope of the inquiry, and might have been raised and decided if the contestants had desired. Impliedly, the decision of the secretary of the interior—that the Warwick entry was valid and lawful—included every question of fact that might properly have been raised and decided in the progress of the contest concerning it. If the rule were otherwise, this case is a good illustration of the intolerable vexation and delay which would attend the procuring of titles by settlers on public lands. As has been stated, the contest in the land department was made upon the single proposition that the Warwick donation, being unsurveyed, could not be purchased, and that Warwick's removal from it after a residence thereon of less than two years, and the payment of one dollar and twenty-five cents therefor, was, in effect, an abandonment of his settlement—a failure to perform the conditions subsequent of the grant, whereby the premises reverted to the United States and were open to settlement under the town-site law. The proposition that Warwick's settlement was for the benefit of another, or that the place was occupied as a town at and before Warwick's settlement, does not then seem to have been thought of, but they are brought forward at this late day and in this form to defeat and nullify the action of the land department in that contest. But it appears that even these questions were brought before the department prior to the issue of the patent, and considered by it as upon a motion for a new trial. On May, 11, 1875, the register and receiver forwarded the principal evidence relied on by the plaintiff upon these points to the commissioner, who, on May 29, 1875, submitted the same to the secretary, with a recommendation that the case be opened, which, on September 30, 1875, was refused by the acting secretary. Upon the whole, there is no equity in the bill, or any ground upon which it can be maintained. It is therefore dismissed, with costs. The same decree will be entered in the cases of the following-named plaintiffs against the same defendants: W. F. Deubmer, Nos. 489, 490; John

Bear, No. 491; George Wolf, No. 492; Frederick Timmerman, No. 493; William G. Webster, No. 494; A. Lobree, No. 495; C. B. Golden, No. 496; William Temple, No. 497.